UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 04-10124-RGS |
| | ) | |
| RICHARD VIKTOR RICHARDSON | ) | |
| BALLESTER | ) | |

DEFENDANT'S SENTENCING MEMORANDUM

INTRODUCTION

Richard Richardson Ballester[1] pled guilty on March 4, 2005
to a four-count indictment charging him with importation of
heroin and cocaine, conspiracy to import heroin and cocaine,
possession with intent to distribute heroin and cocaine and
conspiracy to distribute heroin and cocaine.  Mr. Richardson has
met all of the criteria of 18 U.S.C. § 3553 (f) and therefore
qualifies for the "safety valve."[2]  If the court finds that Mr.
Richardson is eligible for the safety valve, the Probation
Department has determined his guideline sentencing range is 70-87
months.  PSR ¶ 71.  Mr. Richardson requests that the court
impose a sentence of 24 months' imprisonment, which is a sentence

---

[1]Hereinafter referred to as Richardson as that is the name
by which he is known.

[2]Probation Department has determined that he meets criteria
1-4 of U.S.S.G. § 5C1.2.  The government agrees that Mr.
Richardson has provided all of the information and evidence he
has concerning the offense.

that is "sufficient but not greater than necessary" to achieve
the four purposes of sentencing set forth in 18 U.S.C.
§ 3553(a)(2).  United States v. Booker, 125 S.Ct. 738 (January
12, 2005).  Under the circumstances of this case which include:
(1) Mr. Richardson's aberrant conduct, (2) his minimal role in
the offense, (3) the unlikelihood of recidivism, (4) the need to
avoid unwarranted sentencing disparities where he is a non-
citizen who is now deportable and who faces more severe prison
conditions than a non-alien, (5) the fact that the quantity of
the drugs does not reflect the true "nature and circumstances" of
his offense and (6) the fact that he will be incarcerated by ICE
(formerly INS)upon completion of his sentence prior to
deportation, a sentence of 24 months is reasonable, sufficient
and not greater than necessary.

FACTS

I. The Offense

     The instant offense occurred on March 17,2004 when Mr.
Richardson, then a 22 year-old citizen of the Dominican Republic,
was arrested at Logan Airport with heroin and cocaine concealed
in a suitcase.  PSR ¶ 15-18.  Initially Mr. Richardson denied
knowing that there were drugs hidden in the bag and stated that
he believed he was only carrying documents.  PSR ¶ 19-25.
Ultimately he confessed to the government saying that even though

he had not seen the drugs, "he knew in his heart" that he was carrying them.  PSR ¶ 26.

Specifically, Mr. Richardson stated the following during interviews with law enforcement agents and at the safety valve interview.  PSR ¶¶ 20-27.  About one week before his arrest he was approached by two men one of whom was an acquaintance.  They knew he had traveled to the United States before and asked him if he wanted to make some money by transporting passports and birth certificates to Boston, Massachusetts.  Over the next few days the men maintained contact with Mr. Richardson and offered to pay for his airfare, put him up for a two-week stay in Massachusetts, and to pay him between five hundred and two thousand dollars for his efforts.

At the time that these events took place, Mr. Richardson's family had suffered financial losses which in part resulted in him not being enrolled in college that semester.  PSR ¶¶ 26, 52, 53, 56.  He had also been unable to obtain work due to a difficult political and economic situation in the Dominican Republic and felt that he was not contributing to his family.  At first, Mr. Richardson was reluctant to participate with the men and discussed their proposition with his father.  PSR ¶ 26.  His father warned him that their offer was simply "too good to be true."  PSR ¶ 26.  Unfortunately, Mr. Richardson did not heed his father's advice and agreed to transport the documents.

On the day of the trip, the men helped him to renew his passport, bought his airline tickets, and provided him with the suitcase which was already packed.  PSR ¶¶ 20-27.  Although he had a brief opportunity to look inside the bag, he did not do so.  (Safety valve interview).  He never looked in the bag or saw the drugs that he was carrying.  (Safety valve interview).  The men also provided Mr. Richardson with the phone numbers and first names of the people whom he was supposed to meet in Massachusetts.  (Safety valve interview).

Mr. Richardson told the government that "he had allowed himself to be blinded" by the opportunity to make some money especially in light of his financial situation.  PSR ¶ 26.

II.  <u>Mr. Richardson's History</u>[3]

Mr. Richardson is the second of three boys born to Miguelina Ballester and Rafael Richardson.  He is very close to his family and describes it as "perfect."  Prior to his involvement in this case he was a third-year college student at Universidad Iberoamericana in Santo Domingo, Dominican Republic.  After serving his sentence, he intends to re-enroll and complete his bachelors degree in business administration.  His older brother, Raphael, (age 25) is graduating from college this year with a degree in Economics.  His younger brother, Roy, graduated from

---

[3] Facts are gleaned from PSR and documents that are annexed as attachments.

high school this year and intends to enter the Naval Academy in the fall.

Until recently, Mr. Richardson's parents were both employed. Although not wealthy, they lived comfortably and were able to pay for their three children to attend high school and college. Unfortunately, due to a change in the political administration Mr. Richardson's father lost his job as Assistant to the Sub-Secretary of Agriculture. Mrs. Ballester who worked for 24 years in the banking industry, has also been recently unemployed. Fortunately, Mrs. Richardson is now employed in real estate sales.

At the time of this offense, Mr. Richardson had been unable to enroll at the University. He was also unable to find work. His older brother, Raphael, was similarly unemployed. The family was in a difficult financial situation.

Prior to this offense, neither Mr. Richardson nor his family had ever been arrested or had any involvement with the criminal justice system.

The following items are attached to this memorandum in support of Mr. Richardson's sentencing request:

1. Letter from parents

2. Letter from Grace Cochon Jiminez, Coordinator, School of Business Administration at Universidad Iberoamericana (UNIBE)

3. Letter from Dr. Rafael Cruz Quezada

4. Letter from NiniveMena Gratereaux, Vice President of
Operations at Banco Lopez De Haro

5. Dominican Republic certificate of no criminal record

6. Results of psychological profile performed in connection with
job application

7. Family photographic history.

ARGUMENT

Under the Supreme Court's decision in <u>United States v.
Booker</u>, 125 S.Ct. 738 (2005) a court must look to 18 U.S.C.
§ 3553(a), and impose a sentence that is "sufficient but not
greater than necessary" to achieve the four purposes of
sentencing set forth in § 3553(a)(2).  <u>Booker</u> 125 S.Ct. at 764-
65.  In imposing sentence, the Court must consider all of the
factors set forth in § 3553(a)(1)-(7).  The sentencing guidelines
are no longer binding on the court.  <u>Id</u>.

1.  Nature and circumstances of the offense and the
    history and characteristics of the defendant
    <u>(§ 3553(a)(1))</u>.

Although Richard Richardson knew that he was transporting
drugs into the United States, he did not know the nature or
amount of the controlled substances as he had never seen them.
He had never previously transported or used drugs.[4]  He was
recruited by two men who initially told him he would be carrying

---

[4]With the exception of experimentation with a small quantity
of marijuana.

6

documents, a lie he wanted to believe was true.  He did not direct his own activities or those of others and he did not conceive of the conspiracy.  He did not supply the suit case.  He had no involvement in packaging the drugs or packing them into the suitcase.  He did not furnish the money for the airplane tickets to Boston; nor did he select the means of transportation to Boston.  He was to receive only between five hundred and two thousand dollars and had no idea of the value of the drugs he carried.  He did not know the last names of the people who recruited him or the people he was supposed to meet in the United States.  In short, he was simply being used as a mule carrying the drugs from one point to another.

In addition, the quantity of the drugs found is not an appropriate indicator of culpability for Mr. Richardson.  Given the instant factual scenario, the weight of the drugs does not reflect the true "nature and circumstances" of his offense.  See United States v. Jaber, 362 F.Supp.2d 365 (D.Mass. 2005).

The history and characteristics of Mr. Richardson must also be considered.  Mr. Richardson has a history as a law abiding productive member of society whose instant offense is entirely out of character.  Although the guidelines are no longer mandatory, guidance on sentencing where there is a single act of aberrant conduct may be had from United States v. Grandmaison, 77 f.3d 555 (1st Cir. 1996) and United States v. Iaconetti, 59 F.

7

Supp.2d 139 (D. Mass. 1999).  The First Circuit's definition of aberrant behavior, which it adopted from the Ninth and Tenth Circuits, and which has since been followed by the Second Circuit, seeks to examine the "totality of the circumstances" in deciding whether to grant a departure for aberrant behavior. Iaconetti, 59 F. Supp.2d at 144.  See Grandmaison. 77 F.3d at 563.  Mitigating factors that may be considered in evaluating whether the defendant's conduct was unusual include, pecuniary gain to the defendant, spontaneity and thoughtlessness and that the crime was a first offense.  Grandmaison, 77 F.3d at 563.  The court should evaluate all the facts in order to determine whether this offense is a marked departure from the past and is unlikely to recur.  United States v. Bradstreet, 135 F.3d 46, 56 (1st Cir. 1998).

Mr. Richardson was 22 years old at the time of this offense. He had no previous involvement with the criminal justice system or with people like the men who recruited him.  He was naive and used poor judgment.  An examination of Mr. Richardson's past suggests that this offense is a marked departure from an otherwise respectable and irreproachable way of life.  This single act of aberrant behavior is entirely out of character for this respected young man who is known as a good worker, a well behaved and dedicated student and a loving son and brother.

2.  The need for the sentence to "reflect the seriousness

of the offense, to promote respect for the law, and to provide just punishment for the offense" (§ 3553(a)(2)(A)).

A sentence of 24 months for this young man is severe and adequate to reflect the goal of this factor. He has been in harsh pretrial detention conditions at Plymouth County Correctional Facility since March 17, 2004 (nearly 15 months). A sentence of 24 months would require him to serve 9 more months in the Federal Bureau of Prisons. Because of his immigration status he will not be permitted to serve the last portion of his sentence in minimum security (halfway house) prior to being released. Rather, upon completion of his prison sentence, Mr. Richardson will be turned over to ICE and detained until he is deported several months later. This is grave punishment for a 23 year-old college student who has never been arrested before.

3. The need for the sentence "to afford adequate deterrence to criminal conduct" (§ 3553(a)(2)(B)).

Mr. Richardson is from a supportive, close knit family. His actions have caused the people he deeply cares about great pain as well as embarrassment in their community. In addition, Mr. Richardson's conduct has caused his parents financial hardship due to expensive journeys to the United States in order to be with their son.

Mr. Richardson intends to complete his college degree and resume a life of a good citizen. However, he will carry the

shame of his criminal actions with him forever.  Upon his return to the Dominican Republic, Mr. Richardson will be required to register with the police as a person convicted of a serious drug offense, a very black mark in his society.  Furthermore, a 24 month sentence provides a strong deterrent.

4.  The need for the sentence "to protect the public from further crimes of the defendant" (§ 3553(a)(2)©).

As stated above the data indicates that Mr. Richardson will remain a law abiding citizen and not revert to criminal conduct.

5.  The need "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner" (§ 3553(a)(2)(D)).

Mr. Richardson is over halfway through college at Universidad Iberoamericana in the Dominican Republic.  The most effective manner to complete his education and to begin contributing to society is for him to return to his studies as soon as possible.

6.  The "kinds of sentences available."(§ 3553(a)(3)).

Because this is Mr. Richardson's first offense he is eligible for the safety valve and the proposed 24-month sentence is available to the court.

7.  The "kinds of sentence and sentencing range" established under the Guidelines and "any pertinent policy statement"(§ 3553(a)(4) & (5)).

Mr. Richardson qualifies for the safety valve and the
probation department has determined his guideline sentencing
range to be 70-87 months.  Under a sentencing guideline analysis,
because Mr. Richardson was a minimal participant, the court could
depart downward four levels under U.S.S.G. § 3B1.2 bringing the
guideline range to 46-57 months.

Sections 3B1.1 and 3B1.2 of the federal sentencing
guidelines provide mechanisms to enhance or reduce a defendant's
offense level on the basis of the defendant's relative
culpability.  More specifically, under U.S.S.G. § 3B1.2, a court
may reduce a defendant's offense level 4 levels if the defendant
is considered a "minimal participant in any criminal activity;" 2
levels if the defendant is considered a "minor participant;" or 3
levels for "cases falling [in] between."  Defendant argues that
he should be viewed as a minimal participant, and that he should
therefore be awarded the 4-level reduction in his offense level
prescribed by U.S.S.G. § 3B1.2(a).  "[T]he defendant's lack of
knowledge or understanding of th scope and structure of the
enterprise and of the activities of others is indicative of a
role as a minimal participant."  U.S.S.G. § 3B1.2(a) Application
Note 3(C)(4).

Judge Gertner's opinion in United States v. Jurado-Lopez,
338 F.Supp.2d 246, 251-52 (D.Mass. 2004) provides guidance on the
issue of mitigating role reductions in prosecutions involving
drug couriers.  To assess the defendant's relative culpability,

Judge Gertner, citing First Circuit law, reasoned that the court should look both to (1) other participants in the offense of conviction, and (2) other persons convicted of comparable crimes. United States v. Jurado-Lopez, 338 F.Supp.2d 246, 251-52 (D.Mass. 2004)(citing United States v. Martinez-Vargas, 321 F.3d 245, 250 (1st Cir. 2003)).

In addition, Mr. Richardson had no knowledge of the weight or purity of the drugs he delivered. Therefore, the weight of the drugs does not accurately reflect his culpability and an additional downward departure under U.S.S.G. § 5K2.0 (a) is warranted because the facts are outside the heartland of such cases. As stated earlier, Mr. Richardson knew that he was transporting drugs into the United States, he did not know the nature or amount of the controlled substances as he had never seen them. He did not direct his own activities or those of others and he did not conceive of the conspiracy and did not know the people involved. He did not supply the suitcase. He had no involvement in packaging the drugs or packing them into the suitcase. He did not furnish the money for the airplane tickets to Boston; he did not select the means of transportation to Boston. He was to receive a relatively small amount of money. He did not know the last names of the people who recruited him or the people he was supposed to meet in the United States. In short, he was simply being used as a mule carrying the drugs from

one point to another and was a minimal participant in a
conspiracy he knew virtually nothing about.

The amount of drugs transported by Mr. Richardson is largely
what drives the sentencing guidelines.  Here, that the marijuana
equivalency for the cocaine and heroin was 1,419.4 kilograms and
was more than 1000 kilograms and less than 4,000 kilograms, the
base offense level is 32.  PSR ¶¶ 33,34.  However, where the
defendant had no knowledge of the weight or purity of the drugs
the quantity is a weak indicator of his culpability.  See <u>United
States v. Jaber</u>, 362 F.Supp.2d 365 (D.Mass. 2005)(where defendant
had no criminal record, no knowledge of the drug in issue, did
what he was directed to do, and did not set out to distribute a
particular quantity the weight of the drugs did not accurately
reflect his culpability); and a case dealing with fraud amounts,
<u>United States v. Emmenger</u>, 329 F.Supp.2d 416, 427(S.D.N.Y.
2004)("[i]n many cases...the amount stolen is a relatively weak
indicator of the moral seriousness of the offense or need for
deterrence).  Unlike the typical case, Mr. Richardson had no idea
of the quantity of the drugs nor was it foreseeable to him as he
had no life experience with drugs like those hidden in the
suitcase.

    8.  The "need to avoid unwarranted sentence
        disparities among defendants with similar records
        who have been found guilty of similar conduct"
        (§ 3553(a)(6)).

13

This is Mr. Richardson's only criminal offense.  Like similarly situated defendants he qualifies for the safety valve.  However, unlike similarly situated young men, he will not qualify for the 500 hour drug treatment program (he does not have a substance abuse history).  Additionally, unlike other offenders he will not qualify for a term in a halfway house.  Furthermore, although he would have been eligible for the Intensive Confinement Center Program ("boot camp"), that program has recently been eliminated by the Bureau of Prisons.  Finally, Mr. Richardson will face additional incarceration because he is going to be deported.  A sentence of 24 months takes into account all of these factors as well as the factors discussed above that warrant similarly situated individuals receiving a comparable sentence.

<u>CONCLUSION</u>

For the foregoing reasons, Richard Richardson Ballester requests the Court impose a sentence of 24 months imprisonment.

RICHARD VIKTOR RICHARDSON BALLESTER
By his attorney,


/s/Catherine K. Byrne
Catherine K. Byrne
  B.B.O. #543838
Federal Defender Office
408 Atlantic Avenue, 3rd Floor
Boston, MA  02110
Tel: 617-223-8061


June 7, 2005

14